UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARCUS J. GREER, | ) |
| Petitioner, | ) ) ) |
| v. | )  No. 1:22 CV 116 RWS |
| WILLIAM STANGE, | ) ) ) |
| Respondent. | ) ) |

# **MEMORANDUM AND ORDER**

This case is before me on Petitioner Marcus J. Greer's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Greer asserts three grounds for relief in his petition. Because his claims for relief lack merit and/or do not present a basis for federal habeas relief, I will deny Greer's petition.

## BACKGROUND

On August 31, 2018, a jury convicted Greer of three counts of first-degree statutory sodomy, one count of third-degree child molestation, and four counts of possession of child pornography. On November 20, 2018, the trial court sentenced Greer to consecutive terms of thirty years for each first-degree statutory sodomy conviction, ten years for the third-degree child molestation conviction, and seven years for each child pornography conviction.

The Missouri Court of Appeals affirmed Greer's conviction and sentences, and the court's mandate issued on January 2, 2020. Greer did not file for rehearing or transfer to the Missouri Supreme Court. On March 5, 2020, Greer filed a *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The trial court denied his motion without an evidentiary hearing, and the Missouri Court of Appeals affirmed the denial on October 26, 2021. On August 16, 2022, Greer timely filed this petition for writ of habeas corpus.

The Missouri Court of Appeals described the evidence presented at trial as follows:

> In the underlying case and in the light most favorable to the jury verdict, the following evidence was adduced: Sometime in April or May 2017, victim J.K., who was 12 years old at the time, went to the home of her friends, victims D.G. and J.G., to play with a volleyball. D.G. and J.G. are the biological daughters of Kate Cheshire with whom Greer lived. When J.K. arrived, Greer told her that the girls were not home, so J.K. left. Later that day, Greer saw J.K. playing outside alone and lured her to his home by convincing her to try on a tank top and shorts he claimed he purchased for J.G. After changing into the clothes, Greer instructed J.K. to enter his bedroom, bend over, and touch her toes. J.K. complied. Greer told her not to tell anyone about the incident.
>
> A couple of weeks later, while J.K. was watching a movie with D.G. and J.G. in their bedroom, Greer convinced J.K. to follow him into the bathroom where he instructed her to expose her breasts which he then touched with his hands. Upon returning to the bedroom, J.K. told D.G., who was 10 years old at the time, that "something weird" happened. Greer, who had been listening from outside the door, later told D.G. not to tell anybody what had happened.
>
> A week or so later, while J.K. and D.G. were together in the yard, J.K. told D.G. what Greer had done to her. D.G. responded that something similar had also happened to her. Later that day, they both told D.G.'s mother, Katie

> Cheshire. J.K. also told her own mother, who contacted the Children's Services division.
>
> D.G. told Cheshire that on more than 10 occasions Greer had come into her bedroom at night and sexually assaulted her, which included Greer touching and penetrating D.G. with his fingers and Greer making D.G. touch his private parts. These incidents generally happened while Cheshire was at the gas station, at work, or at school. Greer instructed D.G. to not tell anyone about what he was doing to her.
>
> Cheshire confronted Greer and recorded the conversation on her cell phone. Greer initially denied the allegations. After Cheshire called the police, Greer told D.G. that he was sorry, and implored Cheshire not to take any action. When the police arrived and approached Greer, he said that he was the one they were there for and to put him in cuffs.
>
> A few days later, Cheshire found at her house a phone belonging to Greer. On it she found images of her daughters D.G. and J.G. in their underwear, and photos depicting Greer's hands on J.G.'s private areas. After Cheshire reported what she found to the Division of Family Services, a detective arrived and seized the phone.
>
> Greer was charged, tried by jury, and convicted in the Circuit Court of the Ste. Genevieve County of three counts of statutory sodomy in the first degree . . . child molestation in the third degree . . . and four counts of felony of possession of child pornography. The trial court sentenced Greer to . . . a total of 128 years in prison.

ECF No. 6-8 at 2–4 (cleaned up).

In his petition for writ of habeas corpus, Greer raises three grounds for relief:

(1) His trial counsel was ineffective for violating a duty of confidentiality by discussing a plea offer with his parents;

(2) The state court violated his due process rights by failing to have an evidentiary hearing; and

(3) His trial counsel was ineffective for failing to object to allegedly improper remarks made by the prosecutor during closing argument.

3

ECF No. 1 at 4, 6–7. Respondent asserts that Grounds One and Three should be denied in deference to the state courts and that Ground Two should be denied because it fails to state a cognizable claim for federal habeas relief.

## LEGAL STANDARD

Federal courts are authorized to issue habeas relief for state prisoners pursuant to 28 U.S.C § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). But this power is limited to "only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Id.* Notwithstanding narrow exceptions, federal courts may not grant such applications if the applicant has not exhausted state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

For claims adjudicated on the merits in state court proceedings, federal courts may issue habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

An adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An adjudication is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* The standard requires an objectively unreasonable application of federal law; a merely incorrect application is not sufficient. *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Thus, to obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up). This standard is difficult to meet. *Id.* at 357–58.

As with legal findings, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

## DISCUSSION

**A. Ground One: His trial counsel was ineffective for violating a duty of confidentiality by discussing a plea offer with his parents**

In Ground One, Greer claims he was denied effective assistance of counsel because his trial counsel discussed a plea offer with his parents. The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

> In Point I on appeal, Greer argues that counsel was ineffective because he improperly discussed the State's plea offer with Greer's parents without first obtaining his permission to do so. Greer contends this undermined his trust and confidence in his counsel and that but for counsel's conduct in this regard, he would have accepted the State's plea offer which bore a sentence of 20 years, instead of the 128 years he received at trial. We disagree because Greer's assertion is refuted by the record, is illogical, and constitutes rank speculation.
>
> A criminal defendant has no constitutional right to a plea bargain or to a plea agreement. *Rowland v. State*, 129 S.W.3d 507, 510 (Mo. App. S.D. 2004). So, failed plea negotiations do not implicate the Constitution. *Id.* Rather, it is the ensuing plea of guilty arising from such negotiations that is of constitutional significance. *Id.* And to show prejudice where a plea offer has lapsed or been rejected because of counsel's alleged deficient performance, a defendant must demonstrate a reasonable probability he would have accepted the earlier plea offer had he been afforded effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 147 (2012).
>
> Turning to the record here, we find that Greer has failed to demonstrate (1) that his counsel was ineffective when he enlisted Greer's parents' assistance in an effort to convince him to take the plea offer, and (2) that he would have accepted the plea offer but for the contact with his parents.
>
> The State's November 15, 2017, plea offer was that Greer would be sentenced to 20 years in prison in exchange for his guilty pleas to Count I and Count IV along with certain conditions including (1) that he would waive his right to a

Sentencing Assessment Report, and (2) that he would plead guilty to Count II and receive a concurrent 5-year sentence. Also, the plea offer carried a deadline that Greer plead guilty and be sentenced by December 19, 2017, and that Greer give the State at least 7 days' notice before entry of his guilty pleas so that the victims could attend.

Coincidentally, Greer's case was set on the trial court's December 19, 2017 docket concerning a matter unrelated to the State's plea offer. On that date, Greer appeared with counsel. The court announced its ruling on the State's motion in limine relating to the admissibility of propensity evidence. The subject of the plea offer was not raised at that appearance. Regardless, Greer had not given the State the 7 days' notice required by the plea agreement. In fact, Greer demonstrated no intention on that date to even bring up the State's plea offer much less enter a guilty plea pursuant to that offer. In addition, Greer expressed no complaint or any notion of a conflict with his counsel prior to or on that date.

In its decision on Greer's post-conviction motion, the motion court placed considerable weight on Greer's silence at the December 19, 2017 court appearance both as to the plea offer and as to any complaints he may have had relating to counsel's contact with his parents. We agree with the motion court's finding in this regard. The court found that there was "nothing in the record that [Greer] had any intention of accepting the plea offer." If Greer wanted to accept the plea or if he was unhappy with counsel's conversation with his parents, he could have and should have brought those matters to the court's attention on December 19, 2017.

We are likewise unpersuaded by Greer's complaint that his counsel violated his ethical duty of confidentiality by involving Greer's parents in an effort to convince Greer to take the plea offer. Not only do we fail to find any ethical violation, but Greer's assertion in this regard appears to be an after-the-fact effort since he did not raise this issue until after the December 19th deadline when the plea offer had already lapsed.

Simply put, we do not believe the information counsel shared with Greer's parents was confidential attorney-client protected communications. The attorney-client privilege attaches to information transmitted by a voluntary act of disclosure; between a client and his lawyer; in confidence; and by a means which, so far as a client is aware, discloses the information to no third parties other than those reasonably necessary for the transmission of the information

7

or for the accomplishment of the purpose for which it is to be transmitted. *State v. Longo*, 789 S.W.2d 812, 815 (Mo. App. E.D. 1990) (internal citations omitted). All four of the above elements must be present for the privilege to apply. *Id.* In addition, surrounding circumstances should be considered as they indicate the existence, or nonexistence, of any one of the elements. *Id.*

The information that counsel discussed with Greer's parents was simply not attorney-client privileged information. The State's plea offer was not confidential information since it was manifestly known by the prosecuting attorney and likely others in that office.

In *White v. State*, 939 S.W.2d 887, 895 (Mo. banc 1997), the movant alleged that counsel engaged in unethical and improper conversation with the victim's immediate family members concerning the merits of movant's defense and movant's trial strategy. *Id.* The content of these conversations was conveyed to the State which White claimed resulted in his prejudice. *Id.* The Supreme Court rejected White's allegations as mere conclusions and speculation because he failed to demonstrate how these arguably unethical disclosures resulted in prejudice at trial. *Id.*

Compared to the disclosures in *White* which were effectively to the opposing side of the litigation, the disclosure at issue before us was merely to Greer's parents and was for the purpose of getting Greer to take the plea offer which he now illogically claims caused him to do the opposite. So, if the prejudicial effect of the disclosure in *White* was speculative, the level of speculation Greer proposes is even more so.

Moreover, the record establishes that Greer was aware of and understood the terms of the State's plea offer, but he failed to indicate any intention to accept the deal until well after it had expired. The record also shows that Greer had ample time to accept the November 15, 2017 plea offer before the December 19, 2017 deadline. And Greer's assertion after the deadline had passed that he would have accepted it but for his counsel's conversation with his parents is completely refuted by the record. As in *White*, this Court will not offer relief for speculative allegations made after the fact.

ECF No. 6-8 at 5–8.

Greer's ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test to determine when counsel's ineffective performance violates the Sixth Amendment. First, the petitioner "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, the petitioner must "show that the deficient performance prejudiced the defense." *Id.* To demonstrate prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance." *Id.* at 690. "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). This means that Greer must do more than "show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (cleaned up).

9

"Rather, he must show that the [Missouri Court of Appeals] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699 (cleaned up).

The decision by Missouri Court of Appeals is not an unreasonable application of *Strickland*. That court concluded that the plea bargain discussed with Greer's parents was not attorney-client privileged information because it was already known by the prosecutor and others in that office. And after reviewing the record, the court further concluded that no prejudice resulted because Greer never indicated any intention of accepting the plea offer. *See Missouri v. Frye*, 566 U.S. 134, 147 (2012) ("To show prejudice . . . where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer . . .").

The state court reasonably applied federal law, and Greer has not rebutted its factual findings by clear and convincing evidence. As a result, I will deny Ground One of Greer's habeas petition.

### B. Ground Two: The state court violated his due process rights by failing to have an evidentiary hearing

In Ground Two, Greer claims his due process was violated because the state court did not hold an evidentiary hearing on his claims. Greer's claim does not present a cognizable basis for federal habeas relief because "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351–52 (8th Cir. 1997)

10

(quoting *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994)). As a result, I will deny Ground Two of Greer's habeas petition.

### C. Ground Three: His trial counsel was ineffective for failing to object to allegedly improper remarks made by the prosecutor during closing argument

In Ground Three, Greer claims he was denied effective assistance of counsel because his trial counsel did not object to allegedly improper remarks made by the prosecutor during closing argument. The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

> We disagree with Greer's assertion that his trial counsel was ineffective for failing to object to the prosecutor's statement during closing argument that the jury's decision implicated the Victims' credibility because we find the argument was not improper. Therefore, it was not ineffective assistance as a matter of law for trial counsel not to object to a proper argument.
>
> A prosecutor is allowed to comment on the witnesses' credibility during closing argument. *State v. McClain*, 824 S.W.2d 103, 106 (Mo. App. E.D. 1992). A prosecutor may state an opinion or conclusion that he fairly draws from the evidence. *State v. Nickens*, 701 S.W.2d 478, 483 (Mo. App. W.D. 1985). The prosecutor has the right to argue the evidence and the reasonable inferences drawn from the evidence. *State v. Weathersby*, 935 S.W.2d 76, 79 (Mo. App. W.D. 1996) (quoting *Clemmons v. State*, 785 S.W.2d 524, 530 (Mo. banc), *cert. denied*, 498 U.S. 882 (1990)). This includes the right, within the limits of closing argument, to present the State's view on the credibility of witnesses. *Id.*
>
> The mere failure to object does not constitute ineffective assistance of counsel. *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo. App. W.D. 1993). The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial. *State v. Link*, 956 S.W.2d 906, 912 (Mo. App. S.D. 1998) (quoting *State v. Taylor*, 831 S.W.2d 266, 272 (Mo. App. E.D. 1992)). Additionally, because the jury is instructed that the lawyers'

11

> arguments are not evidence, prejudice is unlikely to result from the failure to object to statements made in closing arguments. *See Barton*, 432 S.W.3d at 754.
>
> In *Weathersby*, during her closing the prosecutor said the following, "[Victim] was not in trouble, and [Victim] said, 'I wasn't in trouble, I was ashamed, I was guilty, I was embarrassed'. And that's how these men count on these children feeling." *Weathersby*, 935 S.W.2d at 78. Weathersby claimed that the prosecutor's reference to "these men" was an improper attempt to vilify him as a member of a certain class of men who prey upon girls under the age of consent. *Id.* The trial court denied Weathersby's request for a mistrial. *Id.* The court of appeals held that the trial court did not abuse its discretion in refusing to declare a mistrial because the prosecutor's reference to the young victim's shame and embarrassment was a reasonable inference from the evidence and implied no special knowledge of any evidence pointing to Weathersby's guilt. *Id.*
>
> Here, Greer claims the following argument was improper: "You are not just judging Marcus Greer. You are judging them [the victims]. And word gets around. Their classmates will ask where they have been the last two days. The community will judge them." Greer claims that the prosecutor's intent was to rattle the juror's emotions by holding them personally responsible for any embarrassment these child victims would feel in the event of an acquittal.
>
> We are unpersuaded because we find this argument to be a proper comment on the evidence and the witnesses' credibility. The argument highlights the victim's credibility in having the courage to speak up against Greer in front of a jury, and to stand by their claims despite the scrutiny they might face from the community in the wake of trial. Therefore, we find that the prosecutor made a proper closing argument that did not warrant an objection. *Wickizer v. State*, 617 S.W.3d 885, 891 (Mo. App. W.D. 2021); *Hays*, 484 S.W.3d at 136 (quoting *Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014)).

ECF No. 6-9 at 3–5.

Here, the Missouri Court of Appeals reasonably concluded that the prosecutor's remarks were proper under Missouri law and that the failure to object did not prejudice Greer. Given that determination, this Court will not reexamine the

12

question.  *See Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law.").  As a result, I will deny Ground Three of Greer's habeas petition.

## CONCLUSION

I will deny Greer's petition for writ of habeas corpus because his claims lack merit and/or do not present a basis for federal habeas relief.  I will also decline to issue a certificate of appealability because Greer has not made a substantial showing of the denial of a federal constitutional right.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Marcus J. Greer for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability under 28 U.S.C. § 2253.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

RODNEY W. SIPPEL  
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September 2023.